# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# CHARLESTON DIVISION

| | |
|---|---|
| WILLIE SINGLETON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 2:15-02579-DCN |
| ) | |
| CITY OF GEORGETOWN, ) | |
| JANET GRANT, *individually and* ) | |
| *as an employee of the City of Georgetown*, ) | |
| RICKY MARTIN, *individually and as an* ) | **ORDER** |
| *employee of the City of Georgetown*, ) | |
| ROBERT O'DONNELL, *individually and* ) | |
| *as a magistrate for the City of Georgetown*, ) | |
| ) | |
| Defendant ) | |
| ) | |
| ) | |

This matter is before the court on the City of Georgetown ("Georgetown"), Janet Grant ("Grant"), Ricky Martin "Martin"), and Robert O'Donnell's ("O'Donnell") (collectively, "Defendants") motion for summary judgment, ECF No. 17. For the reasons set forth below, the court grants in part and denies in part defendants' summary judgment motion.

1

## I.  BACKGROUND[1]

This case arises out of a citation levied on a piece of property ("the Lot") in the City of Georgetown, South Carolina.  Compl. ¶ 4.  The citation charged Willie Singleton ("Singleton") with violating City of Georgetown Municipal Code Article II of Public Nuisance § 11-26 ("Section 11-26"), which categorizes lots with "excessive overgrowth with a dilapidated structure" as a public nuisance subject to citation.  Id. ¶¶ 47–51, 56.  The relevant text of Section 11-26 identifies a public nuisance as:

> (3) Any building or part of any building which, on account of its condition, its occupancy or use, may endanger life or health; …
> (7) Any property, whether occupied or vacant, upon which grass, weeds, or undergrowth exceeding eighteen (18) inches in height, trash, garbage, offal, stagnant water, building materials, glass, wood, metal or other matter deleterious to good health and public sanitation is permitted or caused to accumulate in any manner which is or may become a nuisance causing injuries or sickness to the public or neighboring property;
> (8) Any property which, because of its condition, may promote the breeding of harborage of flies, [rats], snakes, vermin or other insects and animals.

---

[1] As an initial matter, the parties seem to have a markedly different understanding of the facts forming the underlying dispute.  Georgetown contends that this case centers on a 2010 citation levied on Singleton for the overgrowth on the Lot.  Defs.' Mot. 3.  Singleton argues that this case is "actually" about Georgetown's selective prosecution against him arising out of (1) O'Donnell's 1995 representation of Alex Alford, Sr., who fraudulently sold Singleton the Lot; (2) Singleton's history of levying complaints against O'Donnell for his fraudulent transference of the Lot; (3) Singleton's history of levying complaints against Georgetown for allowing Grant to engage in code enforcement without being properly licensed; (4) Singleton's 2009 complaint for the allegedly illegal demolition of his home located on Front Street in Georgetown, South Carolina.  Pl.'s Resp. 8–14.  Despite this confusion and for the purposes of this motion only, the court takes Singleton's version of the facts to be true.

Grant sent a series of letters regarding the overgrowth on the Lot beginning in April 2009, but ultimately issued a citation for violation of Section 11-26 in September 16, 2010. Defs.' Mot. 2.

Singleton appeared at the municipal court hearing for his citation and requested a jury trial. Id. Singleton did not show up at his trial, set for July 13, 2011, and was found guilty of violating Section 11-26. Id. at 3. O'Donnell was the municipal court judge presiding over the trial. Compl. ¶ 38. Singleton was fined $1,092.00, consisting of a $500.00 fine and the remainder in court fees. Defs.' Mot. 3. Singleton appealed his conviction to the South Carolina Circuit Court on July 29, 2011, which affirmed his conviction. Id. at 4. Singleton then appealed to the South Carolina Court of Appeals, which found on January 7, 2015 that Singleton's original appeal to the circuit court was untimely and so the circuit court lacked appellate jurisdiction over the appeal. Id., Ex. H, S.C Ct. App. Op. No. 2012-212102. The result of the South Carolina Court of Appeals ruling is that the Circuit Court's decision was vacated, and the original municipal court judgment against Singleton stands.

Singleton, who is African-American, alleges that Georgetown chose to prosecute him for the overgrowth of his lot because of his race and Singleton's history of lodging complaints against Georgetown and various city employees. Compl. ¶ 9. Singleton argues that the Lot was a "naturalized lot"[2] containing an unoccupied house, but that Grant—an employee of Georgetown—nonetheless issued

---

[2] According to Singleton, after an unspecified period of time an overgrown lot becomes "naturalized" such that it no longer requires maintenance of the yard or of any structures that are on the lot. Defs.' Mot. 7, Ex. A, Singleton Deposition 49:2–4.

a municipal citation for violating Section 11-26. Id. ¶¶ 47–51, 56. Singleton contends that Section 11-26 is inapplicable to naturalized lots. Defs.' Mot., Ex. A, Singleton Deposition 51:15–18.

He filed this suit against defendants in the Court of Common Pleas of Georgetown County, South Carolina on May 14, 2015. ECF No. 1. The case was removed to this court on June 26, 2015 because it contained a 42 U.S.C. § 1983 claim. Id. Singleton asserts the following claims: (1) taking of his property as to all defendants;[3] (2) deprivation of substantive and procedural due process based on defendants' failure to give Singleton notice and an opportunity to be heard, and failure to follow prescribed statutory procedures governing condemnation of dilapidated properties as to all defendants; (3) violation of 42 U.S.C. § 1983 as to Martin, Grant, and O'Donnell; (4) gross negligence as to all defendants; (5) Conversion of property without proper compensation as to all defendants; (6) Violation of the Administrative Procedures Act by wrongfully condemning and ordering the removal of the building on the Lot as to all defendants;[4] (7) Negligence in failing to follow proper procedures; (8) Violation of Singleton's equal protection rights as to all defendants.

Defendants filed a motion for summary judgment on June 1, 2016, ECF No. 18, which Singleton responded to on July 11, 2016. ECF No. 26. The motion is now ripe for the court's review.

---

[3] At the hearing on this motion, Singleton conceded that there was no viable takings claim, so the court does not analyze it.

[4] At the hearing on this motion, Singleton conceded that there had been no condemnation of the structure on the Lot so the court does not address this claim.

## II. STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Rule 56(c) of the Federal Rules of Civil Procedure requires that the district court enter judgment against a party who, 'after adequate time for discovery . . . fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" Stone v. Liberty Mut. Ins. Co., 105 F.3d 188, 190 (4th Cir. 1997) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)). Any reasonable inferences are to be drawn in favor of the nonmoving party. See Webster v. U.S. Dep't of Agric., 685 F.3d 411, 421 (4th Cir. 2012). However, to defeat summary judgment, the nonmoving party must identify an error of law or a genuine issue of disputed material fact. See Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); see also Bouchat v. Balt. Ravens Football Club, Inc., 346 F.3d 514, 522 (4th Cir. 2003).

Although the court must draw all justifiable inferences in favor of the nonmoving party, the nonmoving party must rely on more than conclusory allegations, mere speculation, the building of one inference upon another, or the mere existence of a scintilla of evidence. See Anderson, 477 U.S. at 252; Stone, 105 F.3d at 191. If the adverse party fails to provide evidence establishing that the factfinder could reasonably decide in his favor, then summary judgment shall be entered "regardless of '[a]ny proof or evidentiary requirements imposed by the substantive law.'" Bouchat, 346 F.3d at 522 (quoting Anderson, 477 U.S. at 248).

### III.  DISCUSSION

Defendants move for summary judgment[5] on the following grounds:  (1) the Rooker-Feldman doctrine prohibits federal district court review of a state court judgment; (2) the statute of limitations precludes Singleton's action; (3) no cognizable U.S.C. § 1983 claim; (4) no cognizable equal protection claim; (5) no cognizable Fifth Amendment takings claim; (6) no cognizable procedural due process claim; (7) no cognizable substantive due process claim.  Defendants also contend that they should be awarded summary judgment because of the following affirmative defenses:  (1) Georgetown is not liable under the doctrine articulated in Monell v. Dep't of Soc. Servs. of City of N.Y., 436 U.S. 658 (1978); (2) Grant, Martin, and O'Donnell are protected by qualified immunity; (3) the South Carolina Tort Claims Act bars all of Singleton's state law causes of action; (4) O'Donnell is protected by judicial immunity.  The court analyzes each argument in turn.

**A.  Rooker-Feldman Doctrine**

Defendants contend that Singleton impermissibly seeks to obtain appellate review of a final judgment from a South Carolina state court decision, violating the Rooker-Feldman doctrine.  Defs.' Mot. 5.  The Rooker-Feldman doctrine prohibits the United States District Courts, with the exception of habeas corpus actions, from "sit[ting] in direct review of state court decisions."  D.C. Court of Appeals v.

---

[5] Defendants seem to be asserting some sort of Federal Rules of Civil Procedure 12(b)(6) claims in this motion, as evidenced by language such as "[Singleton] fails to state a recognizable claim under 42 U.S.C. 1983."  Defs.' Mot. 7.  Since this matter is before the court on a summary judgment motion, the court analyzes each claim under the summary judgment standard regardless of the language that Defendants use.

Feldman, 460 U.S. 462, 483 (1983).  The doctrine extends not only to constitutional claims presented or adjudicated by the state courts but also to claims that are "inextricably intertwined" with a state court judgment.  Id. at 486–87.  An issue is "inextricably intertwined" with a state court judgment when it "was not actually decided by the state court but where success on the . . . claim depends upon a determination that the state court wrongly decided the issues before it."  Brown & Root, Inc. v. Breckenridge, 211 F.3d 194, 198 (4th Cir. 2000).

   The key issue determining if the Rooker-Feldman doctrine bars this court from considering Singleton's claims is whether the injuries that Singleton alleges resulted from the municipal court judgment or whether they are independent claims.  Defendants contend that this lawsuit stems from the original municipal decision of July 13, 2011 finding Singleton guilty of violating Section 11-26, a final state court decision.  Defs.' Mot. 5.  Singleton, however, is not seeking a review of the $1,092.00 fine levied against him by the municipal court decision.  Instead, he is contending that his property was singled out for enforcement because of his race and as retaliation for his history of speaking out against Georgetown and city employees.  Pl.'s Resp. 23.  The municipal court made no determination on Singleton's selective prosecution or equal protection claims, and the success of Singleton's claims does not depend on this court determining that the municipal court wrongly decided the issue of Singleton's violation of Section 11-26.  This renders the Rooker-Feldman doctrine inapplicable.

  **B.**  **Statute of limitations**

   Defendants next argue that Singleton had three years in which to file a § 1983 action in this court, which he did not do, and so the § 1983 claim is barred.  Defs.'

Mot. 6. Defendants contend that the statute of limitations commenced when Singleton received the summons for the Section 11-26 violation on September 17, 2010, and Singleton did not file this case until May 14, 2015—four and a half years after the summons was served and almost four years after his July 13, 2011 conviction. Id. Singleton counters that the statute of limitations commenced on January 7, 2015, when the final adjudication of his appeal was made by the South Carolina Court of Appeals. Pl.'s Resp. 27.

There is no statute of limitations for actions under § 1983, but it is well settled that the limitations period for § 1983 claims is determined by the analogous state law statute of limitations for a personal injury claim. Wallace v. Kato, 549 U.S. 384, 387 (2007). In South Carolina, the general statute of limitations for personal injury claims is codified in S.C. Code Ann. § 15–3–530(5), which provides that the statute of limitations is three years for "an action for assault, battery, or any injury to the person or rights of another, not arising on contract and not enumerated by law." This three-year statute of limitations has been held to be the applicable limitations period for § 1983 claims in the United States District Court for the District of South Carolina in several cases. See Ward v. Parole, Probation, and Pardon Bd., 2007 WL 3377163 (D.S.C. 2007); see also Rowe v. Hill, 2007 WL 1232140 (D.S.C. 2007); Huffman v. Tuten, 446 F. Supp. 2d 455 (D.S.C. 2006).

The accrual date of a § 1983 cause of action, on the other hand, is a question of federal law that is not resolved by reference to state law. Wallace, 549 U.S. at 388. The standard rule is that "[accrual occurs] when the plaintiff has 'a complete and present cause of action.'" Bay Area Laundry and Dry Cleaning Pension Trust Fund

v. Ferbar Corp. of Cal., 522 U.S. 192, 201 (1997) (quoting Rawlings v. Ray, 312 U.S. 96, 98 (1941)).  In other words, the accrual date is the date that a plaintiff could file suit and obtain relief.  To determine the accrual date for a particular § 1983 claim, the court looks to the common-law tort that is most analogous to the § 1983 claim and determines the date on which the limitations period for this claim would begin to run under state law.  Wallace, 549 U.S. at 388; see also Varnell v. Dora Consol. Sch. Dist., 756 F.3d 1208 (10th Cir. 2014) (noting that "[f]ollowing Wallace, we determine the accrual date of Plaintiff's claim by looking to the accrual date for the common-law tort most analogous to her § 1983 claim").  For most common-law torts, a plaintiff's cause of action accrues when the plaintiff knows or has reason to know of his injury.  Wallace, 549 U.S. at 388.

      Here, Singleton argues that Defendants engaged in selective prosecution by choosing to issue a summons to him for a violation of Section 11-26, but sending only warning letters to Frank Swinnie ("Swinnie"), a white property owner who owned an adjacent lot which also had excessive overgrowth.  Pl.'s Resp. at 18.  This selective prosecution, Singleton alleges, was based on his race and in retaliation for his history of "speaking out" against the City of Georgetown.  Pl.'s Mot. 23.  The state law claim most analogous to Singleton's § 1983 action is the tort of malicious prosecution, which redresses injuries a plaintiff sustains as a result of the defendant's improper initiation or maintenance of formal proceedings against him.  Lambert v. Williams, 223 F.3d 257, 260 (4th Cir. 2000) (applying South Carolina law).  The Fourth Circuit has held that the statute of limitations period for a malicious prosecution claim does not begin to run until a "truly final disposition" is achieved.  Owens v. Baltimore City

9

State's Attorneys Office, 767 F.3d 379, 390 (4th Cir. 2014); see also Heck v. Humphrey, 512 U.S. 477, 483–84 (1994) (finding legality of confinement claim analogous to the common law tort of malicious prosecution, and incorporating into the federal § 1983 claim the common law prerequisite of termination of the prior criminal proceeding in favor of the accused). The date of the "truly final disposition" in this case was on January 7, 2015, when the South Carolina Court of Appeals held that Singleton's original appeal of his conviction to the circuit court was untimely. S.C. Ct. App. Op. No. 2012-212102. Singleton filed this action on May 14, 2015, within three years of the South Carolina Court of Appeal's January 15, 2015 decision. Thus, the court finds that the statute of limitations does not bar Singleton's § 1983 action, and denies defendants' motion on this ground.[6]

### C.    42 U.S.C. § 1983 Claim

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege that he was (1) "deprived of a right, privilege or immunity secured by the Constitution or laws of

---

[6] The court notes that Singleton's version of what the underlying injury is in this case seems to shift based on what argument he is trying to make. In the section of his briefing on this motion addressing the applicability of the Rooker-Feldman abstention doctrine, Singleton argues that this suit is based on defendants' retaliatory prosecution because of his 2009 complaint against Georgetown regarding the demolition of his house on Front Street as well as his 2007 letter to O'Donnell inquiring about the fraudulent conveyance of the Lot. Pl.'s Resp. 24. However, in the section of his response addressing the statute of limitations for his § 1983 claim, Singleton states that it was not until he received the decision from the South Carolina Court of Appeals, the "final adjudication" of the matter, and paid the fine that the "actual harm" occurred. Id. at 26. Taking the response as a whole, Singleton is ultimately arguing that defendants selectively prosecuted him in retaliation for his many years of complaints against Georgetown and city employees, finally resulting in the 2010 issuance of the summons. The court had this factual scenario in mind when ruling on the applicability of the Rooker-Feldman doctrine and the statute of limitations for the § 1983 action.

10

the United States," and that (2) the conduct was "committed by a person acting under color of state law." Dowe v. Total Action Against Poverty in Roanoke Valley, 145 F.3d 653, 658 (4th Cir. 1998) (citing 42 U.S.C. § 1983). Defendants argue that Singleton has failed to state a cognizable § 1983 claim because he has not identified any right of which he has been deprived, as there is no constitutionally protected property interest in the overgrown status of land. Defs.' Mot. 8. Singleton counters that he is not contending that he has a constitutional right to a naturalized lot, but that defendants committed acts that violated his civil rights by "selectively prosecuting him, taking his property, and discriminating against him based on his race." Pl.'s Resp. 28. The court parses out the viability of a § 1983 claim premised on Singleton's selective prosecution and race discrimination claims.

First, the court finds that Singleton has not adequately alleged selective prosecution. "To establish a selective-prosecution claim, a defendant must demonstrate that the prosecution 'had a discriminatory effect and that it was motivated by a discriminatory purpose.'" United States v. Olvis, 97 F.3d 739, 741–42 (4th Cir. 1996) (quoting Wayte v. United States, 470 U.S. 598, 608 (1985)). This requires the plaintiff to prove (1) that similarly situated individuals of a different race were not prosecuted; and (2) that the decision to prosecute was invidious or in bad faith. Id. at 739. As evidence of defendants' selective prosecution in retaliation for his previous complaints against Georgetown and city employees, Singleton offers his March 3, 2009 complaint against Georgetown for the demolition of his home located on Front Street. Pl.'s Mot. 29. Without more, this is not enough to meet Singleton's

11

heavy burden of establishing discriminatory intent or effect.  Georgetown's decision to issue a summons to Singleton for violating Section 11-26 could have been legitimately influenced by the fact that the Lot contained an abandoned, dilapidated structure that needed to be removed or the fact that the Lot contained excessive overgrowth.  See Franklin v. Office of Baltimore City State's Attorney, 2015 WL 799416, at *5 (D. Md. Feb. 24, 2015) (finding that plaintiff's recitation of three cases where Baltimore City State's Attorney dismissed an assault charge against a white person while continuing to prosecute against an African-American person was insufficient to establish selective prosecution, as the prosecutors in those cases may have made their decisions based on reasons unrelated to race).

Singleton's selective prosecution claim is based solely on conclusory allegations such as "[c]onsidering the history of the Plaintiff with the [City of Georgetown] it is clear that Georgetown was out to persecute the Plaintiff."  Pl.'s Resp. 29.  Such statements are insufficient to establish a selective prosecution claim even at the 12(b)(6) motion to dismiss stage.  See Daubenmire v. City of Columbus, 507 F.3d 383, 390 (6th Cir. 2007) ("A claim of selective prosecution can survive dismissal only when the motion alleges sufficient facts to take the question past the frivolous state and raises a reasonable doubt as to the prosecutor's purpose.") (citation omitted).

Second, the court finds that Singleton has not adequately alleged race discrimination.  Singleton contends that the Lot was treated differently from adjacent lots with white property owners.  Pl.'s Resp. 26.  Namely, Singleton argues that Grant only sent warning letters to Swinnie, the white owner of a neighboring lot which also

had excessive overgrowth, while Grant issued a summons to Singleton. Id. at 18. However, Swinnie eventually donated his property to Georgetown, which in turn donated it to Habitat for Humanity. Defs.' Mot. Ex. B, Grant Deposition 56:20–57:5. Singleton does not specify any other white property owners with overgrown lots that violated Section 11-26 who persisted in refusing to comply with warning letters and were issued summons.

While Singleton contends that the defendants' policy of enforcing Section 11-26 had a discriminatory effect, he does not specify any facts to support a finding that African-American property owners bore the brunt of Section 11-26 violations when compared to similarly-situated white property owners—in fact, Singleton does not offer enough evidence to infer any racially-motivated intent at all. Without more, the court cannot find that Singleton has been treated unequally based on his race, and so the court grants defendants' motion on Singleton's § 1983 claim.

### D.    Equal Protection Claim

The Equal Protection Clause of the Fourteenth Amendment provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const., Amdt. 14 § 1. Its central mandate is racial neutrality in governmental decisionmaking. See Loving v. Virginia, 388 U.S. 1, 11 (1967). For a viable equal protection claim, the plaintiff must establish "that the defendant's actions had a discriminatory effect and were motivated by a discriminatory purpose." See Cent. Radio Co. Inc. v. City of Norfolk, 811 F.3d 625, 634–35 (4th Cir. 2016). Although a plaintiff need not show that discrimination was the defendant's "sole motive," he "must allege the requisite discriminatory intent with more than mere

13

conclusory assertions." Williams v. Hansen, 326 F.3d 569, 584 (4th Cir. 2003) (emphasis in original).  To state a valid equal protection claim, the plaintiffs must set forth specific factual allegations that are probative of an improper motive. Id.

As the court explained above when addressing Singleton's § 1983 claim, while Singleton contends that the defendants' policy of enforcing Section 11-26 had a discriminatory effect, he does not specify any facts to support a finding that African-American property owners bore the brunt of the Section 11-26 violations when compared to similarly-situated White property owners.  This is fatal to the viability of his equal protection claim.  Singleton offers no evidence that Defendants have a history and practice of targeting African-American property owners for Section 11-26 violations or that any African-American property owners in Georgetown had lodged similar complaints of race discrimination against Defendants.  Additionally, during the same time period that Grant sent Singleton warning letters requesting that he clean up the overgrowth on the Lot, she sent warning letters to other property owners with overgrown lots that contained dilapidated structures.  Defs.' Mot. 8.  As evidence of his equal protection claim, Singleton contends that an adjacent lot owned by Swinnie was similarly overgrown but did not receive a summons.  Pl.'s Mot. 19.  However, Grant testified that she sent numerous letters to Swinnie requesting that he clear the overgrowth on his property and she avoided issuing him a summons for violation of Section 11-26 until 2014 because Swinnie was responsive and cooperative.  Defs.' Mot 8.

Singleton also offers as support for his equal protection claim the general statement that "[t]here are several lots within the City limits that contain . . .

overgrowth that the City has not ordered cleared." Pl.'s Mot. 19.  In doing so, Singleton cites to a number of newspaper articles about Georgetown's use of code enforcement to clean up buildings and properties deemed an "eyesore," as well as remarks by Georgetown City Councilmembers that "the problem [is] irresponsible property owners and not enough aggression on the city's part."  Pl.'s Resp. Ex. 18, Lowe Letters.  Singleton also includes a relatively lengthy list of property owners who were issued letters by Grant warning that they had violated Section 11-26.  Id. However, even this list of "eyesore" properties that Georgetown was targeting to be torn down through the issuance of Section 11-26 violations is not enough to survive summary judgment for an equal protection claim.  Even if Singleton had presented statistical evidence that enforcement of Section 11-26 had a disparate impact on African-American property owners—which the court notes that Singleton has not done—a violation of the equal protection clause requires a plaintiff to prove that the state intended to discriminate.  Sylvia Dev. Corp. v. Calvert Cty., Md., 48 F.3d 810, 819 (4th Cir. 1995).  The simple fact that a benefit was denied to one person but conferred on another is not enough to establish that a statute was administered or enforced discriminatorily.  Id.

Here, Singleton presents only vague and unspecific allegations about the allegedly disparate treatment of other overgrown lots in Georgetown.  Singleton has not proven a racially disproportionate impact, let alone a discriminatory animus.  The court finds that Singleton has not stated a plausible equal protection claim and grants defendants' motion on this count.

    **E.**  **Procedural and Substantive Due Process**

Next, defendants contend that Singleton has failed to demonstrate evidence of a procedural or substantive due process violation.  Defs.' Mot. 13–18.  Due process contains both substantive and procedural components—procedural due process prevents "mistaken or unjust deprivation," while substantive due process prohibits certain actions regardless of procedural fairness.  See Zinermon v. Burch, 494 U.S. 113, 125–26 (1990); see also Carey v. Piphus, 435 U.S. 247, 259 (1978).  The court addresses each in turn.

Procedural due process requires both fair notice of an impending state action and an opportunity to be heard.  Mathews v. Eldridge, 424 U.S. 319, 333 (1976).  Proper notice is "an elementary and fundamental requirement of due process," and must be reasonably calculated to convey information concerning a deprivation.  Mullane v. Cent. Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950).  Mathews presents a three-step test for determining the adequacy of the opportunity to be heard: (1) a balancing of the private interest and the public interest; (2) the risk of an erroneous deprivation of such interest through the procedures used, and (3) the value, of additional or substitute procedural safeguards.  424 U.S. at 335.

Here, Singleton was given several warnings to clear out the overgrowth on the Lot before Grant issued a summons, and even after the summons was issued Singleton had the opportunity to avoid summons by complying with Section 11-26 and clearing the lot.  Defs.' Mot. 14.  After receiving the summons, Singleton was given the opportunity to have a jury trial in municipal court on his charge, although he chose not to attend his trial and after his conviction in municipal court, Singleton was able to appeal his conviction to the Court of Common Pleas as well as the South

Carolina Court of Appeals.  It is unclear how much more procedural due process Singleton believes he should have been afforded.  Singleton had both fair notice of his violation of the public nuisance code and the opportunity to be heard.  Therefore, the court grants Defendants' summary judgment on the procedural due process claim.

To give rise to a substantive due process violation, the allegedly arbitrary action must be "unjustified by any circumstance or governmental interest, as to be literally incapable of avoidance by any pre-deprivation procedural protections or of adequate rectification by any post-deprivation state remedies." Rucker v. Harford Cnty., 946 F.2d 278, 281 (4th Cir. 1991).  This is a relatively arduous standard to meet.  Singleton contends that he had a valid property interest in the Lot to "keep the property in its natural state" and that "the Defendant was attempting to have [Singleton] demolish the structure without the proper procedure as set forth by the law."  Pl.'s Mot. 35.   However, the structure on the Lot was never condemned.  Singleton Dep. 44:24–45:2.

To the extent that Singleton is challenging Georgetown's power to impose Section 11-26 altogether, the Fourth Circuit has held that a plaintiff must prove that a state's action "has no foundation in reason and is a mere arbitrary or irrational exercise of power having no substantial relation to the public health, the public morals, the public safety or the public welfare" to establish a substantive due process violation.  MLC Auto., LLC v. Town of S. Pines, 532 F.3d 269, 281 (4th Cir. 2008) (quoting Nectow v. City of Cambridge, 277 U.S. 183, 187–88 (1928)).  Grant testified that the structure on the Lot was public safety concern because it was structurally unsound and could collapse, and that the overgrowth on the Lot had led to

the breeding of mice and snakes such that it was a public health hazard. Defs.' Mot., Ex. 6, Municipal Ct. Trial Tr. at p. 1–2. Singleton does not have a protected property interest to maintain the Lot in a manner that it is deleterious to public health and safety. The court grants defendants' summary judgment motion on the substantive due process count.

### F.     Affirmative Defenses

Defendants present a number of affirmative defenses, including the applicability of the Monell doctrine to shield Georgetown from liability and the doctrine of qualified immunity to protect the individual defendants. Def. Mot.18-20. However, the court has now granted the defendants' summary judgment motion on Singleton's § 1983 claim and his constitutional claims. Since Singleton's claims fail on the merits, the court does not reach the issue of affirmative defenses.

Furthermore, as the only claims remaining in the case are state law claims,[7] the court finds that there is no independent basis of federal jurisdiction and the court declines to exercise supplemental jurisdiction over any remaining state law claims in this action. The Supreme Court has ruled that supplemental jurisdiction is a "doctrine of discretion, not of plaintiff's right, and hence the power need not be exercised in every case in which it is found to exist." United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 726 (1966). The Court went on to hold that "[c]ertainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well." Id. (emphasis added). By

---

[7] The court notes that it is also difficult to ascertain if Singleton is alleging state law causes of action in the complaint. In the event that he is, the court refrains from exercising jurisdiction over those causes of action.

deciding on the merits of the summary judgment motion in regards to Singleton's purported state law causes of action, the court would be hearing purely state law claims in a case that it no longer has any original jurisdiction over.  Since the federal claims in this case have been dismissed before trial, the court follows the reasoning in <u>United Mine Workers</u> and remands the state law claims to the Court of Common Pleas for Georgetown County.

## IV.   CONCLUSION

For the reasons set forth above, the court **GRANTS IN PART AND DENIES IN PART** Georgetown's summary judgment motion.  Specifically, the court **DENIES** the motion on the Rooker-Feldman doctrine and statute of limitations grounds, and **GRANTS** the motion as to Singleton's § 1983, equal protection, procedural due process, and substantive due process claims.  Given that the federal claims in this case have been dismissed, the court exercises its discretion to refrain from deciding the remaining state law claims and remands the state law claims to the Court of Common Pleas for Georgetown County.

**AND IT IS SO ORDERED**.

**DAVID C. NORTON**
**UNITED STATES DISTRICT JUDGE**

**February 13, 2017**
**Charleston, South Carolina**